[Civ. No. 13498. Second Dist., Div. One. Sept. 14, 1942.]

FANNY ALEXANDER, Appellant, v. H. O. BAMES, Respondent.

Phillip W. Silver and John K. Boukather for Appellant.

Fred O. Reed, Richard L. Kirtland, Henry E. Kappler and John K. Ford for Respondent.

YORK, P. J.—Plaintiff instituted the instant action against defendant, a plastic surgeon, to recover damages for alleged malpractice. Her original complaint alleges that defendant so negligently performed two operations on her nose as to cause the same to become disfigured and unsightly to her damage in the sum of $25,000. Plaintiff's first amended complaint realleges the cause of action for negligence; sets up a second cause of action on an express warranty and breach thereof by defendant with respect to the first operation performed by him; and also sets up a third cause of action alleging an express warranty as to the second operation and a breach of said warranty by defendant.

The answer denied generally and specifically the allegations of the amended complaint with respect to all three causes of action and set up the statute of limitations as a distinct and separate defense to the second and third causes of action.

The trial court granted defendant's motion for judgment on the pleadings as to the second cause of action on the ground said cause was barred by subdivision 1, of section 339 of the Code of Civil Procedure. Thereafter the jury returned its verdict for defendant on the first cause of action. It also returned its verdict on the third cause of action in favor of defendant, pursuant to the order of the court granting defendant's motion for a directed verdict as to that count. "Judgment on verdict in open court" was entered on June 17, 1941, as to the first and third causes of action, but said judgment made no mention as to the disposition of the second cause of action. On August 30, 1941, plaintiff perfected her appeal from the judgment of June 17, 1941. The omission in said judgment of mention of the second cause of action was later discovered and on July 13, 1942, judgment as to said second cause of action was entered *nunc pro tunc* as of June 17, 1941, and plaintiff on July 16, 1942, filed her notice of appeal therefrom.

The following facts were developed by the evidence adduced at the trial: On February 21, 1939, appellant consulted respondent plastic surgeon concerning an operation whereby respondent would shorten appellant's nose, remove the hump and bulbous tip and narrow the sides thereof. At that time respondent took photographs of appellant's nose and appellant signed a statement of complaint and correction which described appellant's complaint and the work to be done on her nose, closing with the statement: "I understand that in rendering treatment to me, Dr. Bames undertakes to exercise his best skill and judgment as a physician and surgeon to accomplish the desired result, but does not warrant or guarantee such result."

The fee for the work was $175 including whatever treatments were necessary to secure the desired result.

On March 3, 1939, when appellant again consulted respondent, the latter pointed to a pencil line which he had drawn on one of the photographs above referred to and stated: "You see that hump above the line? I will remove that. . . . I will also remove the bulbous tip and make your nose shorter and straighter." Appellant had an oily skin,

but in respondent's judgment she did not have a disease known as seborrhea and in his opinion the degree of oiliness of her nose did not indicate that an operation should not be performed or that the oily skin would have any effect on the case. Before the operation appellant had a urinalysis and a heart and chest examination to determine that she was a fit subject for the operation. On March 20, 1939, respondent operated on appellant's nose before which he gave her a sedative and an anaesthetic and washed her face and the inside of her nose with potassium mercuric iodide, an antiseptic which is alkaline in reaction and dissolves fat. Respondent incised the inside of the nose at the fibrous septum carrying the incision up on both sides inside the nose, lifted up the fleshy section of the nose from the bony section, chiseled away the hump of bone, all of which was accomplished without cutting through the external skin of the nose, and then using a chisel, respondent narrowed the bone on the side of the nose. Through the same internal incision he removed cartilage to reduce the bulbous tip and sutured the internal incision, there being no sutures on the external part of the nose.

Two days after the operation respondent removed the bandages and noticed the nose was not progressing normally—it was red and irritated, with a seeping or weeping from the outside. He applied surgical mercurochrome and rebandaged the nose. On appellant's ninth visit to his office on April 7, 1939, respondent noticed a slight transverse rugae over the lower area of the nose, to wit: "a fairly deep wrinkled field also known as a depression" or hole which represented the merging of several broken pores; also a scar on both sides of the nose. On May 5th respondent told appellant that her nose had not healed the way he thought it should and that it might be necessary to operate again, and that it was possible that inflammation might develop. Appellant informed respondent she was willing to undergo whatever he decided, and on July 13, 1939, respondent made a resection from outside of the nose and removed the depression and scar formation. As result of the second operation, one side of the nose cleared up but a depression remained on the other side. The parties had two conversations on February 15th and 19th when respondent "decided not to risk surgical resection but recommended sparking (electrical treatment) and did spark the two most

prominent crags with the suggestion that this be repeated approximately a week later.'' Appellant submitted to two sparking treatments; "the improvement was all that could be hoped for because it had to be a gradual thing"; but appellant "never returned after the second" treatment, and never again communicated with respondent.

At the trial respondent was asked to describe the then condition of appellant's nose which he did as follows: "In profile you can see two irregular scar lines. A square one near the center of the nose and a rectangular one going laterally sideways about a quarter of an inch long. This quarter of an inch one seems to be about a sixteenth of an inch wide and about a thirty-second of an inch deep. The square one is approximately an eighth of an inch and about the same depth.'' Respondent testified he did not tell appellant that there was any probability of the development of depressions in her nose following the plastic surgery, although he did state to appellant at their very first conversation when she asked him if he could guarantee the result of the proposed operation: "I can cut and trim down, but I do not do the healing. I do not know which way the healing will go, whether it will be in my favor or part of it be against me. It would be the uncertainty of the healing that I cannot guarantee.''

From the time appellant saw her nose after the first operation and continuing until the second operation was performed, she was very much embarrassed and ashamed; would not go out any place because people would stare at her; she was ashamed to return to work and felt "terrible.'' After the second operation she was very embarrassed because of the condition of her nose; was self-conscious and isolated herself from her co-workers; was very solemn and worried. This state of mind continued until the time of trial.

Appellant urges (1) that the court erred in granting respondent's motion for judgment on the pleadings because the second cause of action of the first amended complaint was not barred by the statute of limitations; (2) that there was substantial evidence from which the jury might have found that respondent expressly warranted to appellant that he would remove the scar formation from her nose; that there was a breach of such warranty and the court erred in directing a verdict for respondent on the third cause of

action; (3) the court erred in giving the jury respondent's instructions numbered 18, 27 and 29.

In connection with her first point, appellant argues that in granting the motion for judgment on the pleadings the court "concluded that the statute of limitations should be computed from the date of the filing of the amended complaint, rather than the date of the filing of the original complaint." In this regard she claims that her "change from a cause of action based on negligence (as alleged in the original complaint) to include an additional cause of action for breach of warranty (as alleged in her amended complaint) was based on the same operation, and the same attendant results, was a change only in the theory of remedy of the appellant and was not the statement of an entirely, wholly and different cause of action, which was entirely foreign to the original cause of action."

While it is true that appellant's original complaint filed March 14, 1940, is based upon the alleged negligence and lack of skill of respondent in performing the two operations upon appellant's nose, said complaint also alleges "That the defendant *represented* to the plaintiff that by performing a plastic operation on her nose, he would reshape her nose, making it straight and shorter, also remove the bumps therefrom and thereafter she would have a good looking nose. . . . That the plaintiff *believing the representations and guarantees of the defendant,* employed the said defendant, as such plastic surgeon, to perform the operation on her nose." (Emphasis added.)

Appellant's amended complaint filed May 26, 1941, by leave of the court realleges the negligence and lack of skill of respondent in performing the two operations, and as a second cause of action (as to which the court granted respondent's motion for judgment on the pleadings), it is alleged as follows: ". . . That the *defendant represented and expressly warranted* to the plaintiff that by performing a plastic operation on her nose he would reshape her nose making it straight and shorter, also remove the hump. . . . That the *plaintiff believing the representations and warranty of the defendant,* employed the said defendant. . . . That through and by the said *breach of said warranty* of said defendant, plaintiff's nose has become disfigured and made unsightly, causing her extreme humiliation, pain and mental anguish, all to her damage in the sum of $25,000.00." (Emphasis added.)

The original complaint was not a model pleading. However, a general and special demurrer thereto was overruled by the court, and a cursory reading of its various allegations reveals that in addition to negligence the pleader was attempting to charge respondent with having made certain representations and guaranties to appellant and that believing and relying upon such representations and guaranties, she was persuaded to employ the respondent. In other words, the pleading sufficiently states a cause of action on warranty.

In holding that an amended complaint which separately stated two causes of action theretofore improperly pleaded as one cause of action was not barred by the statute of limitations, the court said in *Lovelace* v. *Free*, 11 Cal. App. (2d) 370, 373 [54 P. (2d) 82]:

"The allegations were not made in an approved manner and the cause of action was not separately stated, but they clearly served as a basis for the second amendment and prevented the running of the statute."

See, also, *Day* v. *Western Loan & Bldg. Co.*, 42 Cal. App. (2d) 226, 231 [108 P. (2d) 702], wherein it is said: "Stated another way, if the original complaint defectively states a cause of action, it may be amended after the running of the statute as long as the cause of action stated in the amended pleading can trace its descent from the original pleading."

Since it is the opinion of this court that the amended complaint herein traces its descent directly from the original complaint which was filed on March 14, 1940, it follows that subdivision 1, of section 339 of the Code of Civil Procedure is not a bar and that it was error to grant respondent's motion for judgment on the pleadings as to appellant's second cause of action.

Because it is necessary to remand the case for trial upon appellant's second cause of action which is so closely involved with the first and third causes of action that it is impossible to extricate it from them, it is deemed inadvisable to pass upon appellant's remaining contentions, but to await the outcome of the second trial.

For the reasons stated, the judgments appealed from are, and each of them is, reversed.

Doran, J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 12, 1942.